CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
September 26, 2025
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| BRUCE A. ESTES, | ) | |
| Plaintiff, | ) | Civil Action No. 7:23-cv-00693 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| GREEN ROCK CORRECTIONAL | ) | Chief United States District Judge |
| CENTER, *et al.*, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Bruce Estes, an inmate of the Virginia Department of Corrections, brought this suit *pro* se

alleging claims related to the exercise of his Jewish religion.  (Compl., Dkt. No. 1.)  Estes sued

eleven defendants, three of whom were dismissed in a prior order.  (Dkt. No. 29.)  The eight

remaining defendants are VDOC religious advisors and members of the Faith Review

Committee.  Seven of those defendants have moved for summary judgment.  (Dkt. No. 35.)  One

of the remaining defendants, Anthony White, has not been served.  (Dkt. No. 31.)  Plaintiff

responded to the motion for summary judgment.  (Dkt. Nos. 38, 39.)

Defendants' motion will be granted in part and denied in part.  The court will also

dismiss plaintiff's claims against White, the unserved defendant.

I.  BACKGROUND

**A.  Plaintiff's Claims**

Estes is incarcerated at Green Rock Correctional Center.  The defendants moving for

summary judgment are Bernard Morris, Chaplain and Religious Advisor to VDOC; Wendy

Brown, Chair of the Faith Review Committee; Frederick Russell, Faith Review Committee

member and Assistant Warden at Greensville Correctional Center; Jeffrey Snoddy, member of

the Faith Review Committee and the Greensville Warden; Melissa Vandermark, Faith Review

Committee member and Operations Manager at Sussex II State Prison; and Melvin Davis, member of the Faith Review Committee and Warden of Coffeewood Correctional Center. (Brown Aff. ¶ 4, Dkt. No. 36-2.)  The defendant who has not been served, Anthony White, is a member of the Faith Review Committee and the Superintendent of Haynesville Correctional Unit # 17.  (*Id.*)

Estes alleges that his religious exercise was substantially burdened by the denial of a Sukkah for the Jewish observance of Sukkat.  (*See* Compl. at 1.)  Estes was also denied a Lulav and Etrog, the Citron fruit, Myrtle branch, and Palm branch.  Plaintiff submitted numerous requests for these items to the Faith Review Committee and was denied.  (*Id.* at 2.)  Estes has sued defendants in their official capacities.

Estes alleges that his faith requires him to dwell in a Sukkah for seven days for the Jewish observance of Sukkat.  (*Id.* at 4.)  Not doing so "places the Plaintiff's soul in peril."  (*Id.*)  The Faith Review Committee, under the guidance of Morris, denied all requests for a Sukkah. Estes submitted a supplemental request explaining that at a minimum, he must eat at least three meals a day in the Sukkah, but this was also denied.  (*Id.*)

The Torah also commands adherents to have Lulav and Etrog—Citron fruit, Palm and Myrtle branches during Sukkot.  (*Id.*)  In November 2022, Matthew Thacker, a non-Jewish inmate, submitted a religious item request for approval of the Lulav and Etrog.  The request was refused by Morris and the Faith Review Committee because live vegetation creates a sanitation issue.  (*Id.* at 5.)

On July 24, 2023, Estes sent a request to facility Chaplain Doug Huff asking him to request approval for the Lulav and Etrog from Morris.  Estes told Morris to specify that these are communal items used during Sukkat services, stored in the Chaplain's office when not in use in a

2

locked closet.  (*Id.*)  Huff told Estes that Morris and the Faith Review Committee was aware of these facts.

Estes met with Warden Mike Seville, Assistant Warden Randall Bateman, and Chaplain Huff on August 18, 2023.  Estes recounted that for the previous 18 years of Estes' incarceration, the Lulov and Etrog had been allowed, including as recent as Sukkot in 2022.  The Aleph Institute had sent the items to Chaplain Huff for plaintiff to use during Sukkat.  Warden Seville contacted Morris, but the items were denied.  (*Id.*)

The court has construed Estes' complaint as alleging claims for violation of the Free Exercise Clause of the First Amendment pursuant to 42 U.S.C. § 1983 and violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA).  (Dkt. No. 29.)  Plaintiff asks for an order directing defendants to allow use of the Lulav and Etrosg and to permit Estes to use a Sukkah.  (Compl. at 7.)

## B.  Defendant's Motion

In support of their motion for summary judgment, defendants have filed affidavits by defendants Morris and Brown.  (Dkt. Nos. 36-1, 36-2.)

Operating Procedure 841.3 addresses Offender Religious Programs for VDOC facilities. This procedure establishes protocols for offenders to practice religion subject to concerns about safety, security, space, and resources.  (Morris Aff. ¶ 5.)

The Faith Review Committee (FRC) is a panel of representative VDOC staff who serve in an advisory and decision-making capacity regarding religious accommodations in the VDOC. The Committee reviews all Facility Unit Head or designee referrals for holy days, religious items, and other requested religious accommodations.  The FRC makes a recommendation to the Chief of Corrections Operations on approval or disapproval to ensure statewide consistency

based on security and operational concerns.  The FRC meets quarterly but may review referrals more frequently as needed.  (Morris Aff. ¶ 6.)

Inmates are limited to communal and individual religious items that are approved by the FRC.  Items can be approved after submitting a Religious Item/Holy Day Observance Request. The Facility Unit Head or designee will confirm the religious item is not on the Approved Religious Items, research the item, recommend approval, approval with restrictions, or disapproval.  Then, the request is forwarded to the FRC for review.  (*Id.* ¶ 7.)

If the FRC reviewed the item within the last 12 months, a new review is not required. The Operations Support Manager may document the committee's previous decision on the Religious Item/Holy Day Observance Request without further committee review.  The FRC will review the request and decide to approve, disapprove, or approve as amended and will return a copy of the request to the Facility Unit Head and the requesting inmate.  When the FRC approves an item, it is updated on the list of approved items.  (Morris Aff. ¶ 7.)

At an FRC meeting on November 18, 2022, the committee reviewed two requests from Estes and Thacker for a Sukkah Hut to be used during the Sukkot Observance (Jewish Feast of Tabernacles).  (Morris Aff. ¶ 8.)  Present at the meeting were defendants Brown, Russell, Snoddy, and Vandermark.  Defendants Davis and White were absent.  (Brown Aff. ¶ 4.)

Previously, on August 27, 2019, the FRC had reviewed a request by Estes for a Sukkuh Hut and it was denied for security reasons—visibility issues.  The FRC disapproved Estes' request for the same reasons.  The hut is a tent-like structure that is solid on both sides.  It does not allow for visibility by security staff.  The FRC notified plaintiff of its decision by letter dated January 27, 2023.  (Morris Aff. ¶ 9.)

4

At the same November 18, 2022 meeting, the FRC reviewed the inmate request for Etrog

and Lulav, and the request was disapproved.  However, on September 27, 2024, the policy was

amended by a memorandum from David Robinson, the Chief of Corrections Operations.  The

policy change allowed for the donation of the items by qualifying Jewish organizations for

inmate use.  In the absence of a donation, the inmate can use a picture of Etrog and Lulav for the

observance.  (Brown Aff. ¶nm5.)

## C.  Plaintiff's Response

Estes argues that while the Sukkah is enclosed on three sides, so is his jail cell.  An

officer could be assigned to observe consumption of food in the Sukkah, just as officers make

rounds to observe inmates in their cells.

Also, even though the policy was changed to permit the use of Lulav and Estrog, the

policies could be changed in the future.

Ultimately, Estes argues that the past damage that resulted was "irreversible damage done

on a spiritual level."  (Dkt. No. 38 at 2.)  Estes was forced to modify his behavior and to abandon

key tenets of his Jewish beliefs.  Estes had been allowed to use the Lulav and Estrog for the first

20 years of his incarceration but was denied those items for the previous two years.

In a supplemental response, Estes asserts that the FRC members did not investigate a

"pop up" Sukkah.  (Dkt. No. 39.)  This is a portable pop-up Sukkah that takes about 10 minutes

to set up, is small, and can be erected long enough for plaintiff to enter and eat a pastry or small

bag of chips which would fulfill the Torah command to eat in the Sukkah.  The Sukkah can then

be taken down, placed in a carrying case, and securely stored in a Chaplain's office or other

secure area.  Plaintiff attached pictures of the pop-up Sukkah which is available online.  (*Id.* at 2–

3.)[1]

## II.  ANALYSIS

### A.  Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  In evaluating a summary judgment motion, a court "must consider whether a

reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn

from the underlying facts in the light most favorable to the non-movant."  *In re Apex Express*

*Corp.*, 190 F.3d 624, 633 (4th Cir. 1999).  The party seeking summary judgment shoulders the

initial burden of demonstrating to the court that there is no genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold

demonstration, the non-moving party, to survive the motion for summary judgment, may not rest

on the allegations averred in the pleadings.  *Id.* at 324.  Rather, the non-moving party must

demonstrate the existence of specific, material facts that give rise to a genuine issue.  *Id.*  Under

this standard, the existence of a mere scintilla of evidence in support of the non-movant's

position is insufficient to withstand the summary judgment motion.  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 252 (1986).  Likewise, conclusory allegations or denials, without more, are

insufficient to preclude granting the summary judgment motion.  *Id.* at 248.

### B.  Religious Exercise Claims

The Free Exercise Clause of the First Amendment "requires prison officials to reasonably

accommodate an inmate's exercise of sincerely held religious beliefs."  *Greenhill v. Clarke*, 944

---

[1] This supplemental response by Estes was sworn under penalty of perjury.  (Dkt. No. 39 at 1.)  His
complaint and his initial response are not verified.

F.3d 243, 253 (4th Cir. 2019).  "In order to state a claim for violation of rights secured by the

Free Exercise Clause, an inmate, as a threshold matter, must demonstrate that: (1) he holds a

sincere belief; and (2) a prison practice or policy places a substantial burden on his ability to

practice his religion." *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018).  If that threshold

showing is made, the inmate "must then show that the practice or regulation is not 'reasonably

related to legitimate penological interests.'" *Firewalker-Fields v. Lee*, 58 F.4th 104, 115 (4th

Cir. 2023) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

      Plaintiff has not shown that defendants' refusal to allow him to have religious items was

not reasonably related to legitimate penological interest.  A Sukkoh hut has three solid sides,

which hampers the ability of security officers to see into the hut.  Moreover, the Etrog and Lulav

were refused because of sanitary concerns.  In any event, Estes requests injunctive relief, not

monetary damages, so the change in policy with respect to the latter two items renders plaintiff's

claim moot.[2]  The court will therefore grant the motion for summary judgment as to the First

Amendment claim.

      As for Estes' statutory claim, RLUIPA "provides more stringent protection of prisoners'

free exercise rights, applying 'strict scrutiny instead of reasonableness.'" *Jehovah v. Clarker*,

798 F.3d 169, 176 (4th Cir. 2015) (quoting *Lovelace v. Lee*, 472 F.3d 174, 186 (4th Cir. 2006)).

It "prohibits a state or local government from taking any action that substantially burdens the

religious exercise of an institutionalized person unless the government demonstrates that the

action constitutes the least restrictive means of furthering a compelling governmental interest."

*Holt v. Hobbs*, 574 U.S. 352, 356 (2015).  "The inmate bears the initial burden of showing a

substantial burden of [his] religious exercise, but the government must establish that the burden

---

[2] Plaintiff's RLUIPA claims are also moot to the extent they relate to Etrog and Lulav.

is the least restrictive way to further a compelling governmental interest." *Jehovah*, 798 F.3d at

176–77.

Defendants concede that Estes has a sincerely held religious belief and that defendants

are substantially burdening plaintiff's religious practice by not allowing him to use a hut during

Sukkot.  However, defendants argue that this is the least restrictive way to further its compelling

governmental interest in inmates being visible to prison security officials and staff members.

The Supreme Court has stated that courts "must hold prisons to their statutory burden, and they

must not 'assume a plausible, less restrictive alternative would be ineffective.'" *Holt*, 574 U.S.

at 368 (quoting *United States v. Playboy Entertainment*, 529 U.S. 803, 824 (2000)).  Defendants

have not provided any evidence that they considered other alternatives or explained their

reasoning for rejecting such alternatives.  *See Miles v. Guice*, No. 5:13-CT-3193-FL, 2015 WL

847411, at *5 (E.D.N.C. Feb. 26, 2015).  Indeed, Estes's response to the motion for summary

judgment notes that an officer could be assigned to observe him in the hut, and plaintiff suggests

that being in the hut only during meals would be sufficient for religious purposes.  Plaintiff's

supplemental response also suggests the possibility of a "pop-up" Sukkoh.  Defendants did not

file any response or provide any explanation why these accommodations would not be feasible

for penological purposes.

Finally, defendants argue that the claims against Davis and Morris should be dismissed

for lack of personal involvement.  *See* Dkt. No. 29 (explaining that claims should be dismissed

against defendants who are not personally involved because vicarious liability is inapplicable to

§ 1983 and RLUIPA claims (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).  Morris

contends he should be dismissed because he is not a voting member of the FRC.  Estes argues

Morris could still influence the outcome of FRC decisions as a non-voting, religious advisor.

The court finds that there is an issue of fact as to whether Morris could have an impact or influence on FRC decisions, even in an advisory role.[3]  Davis also argues that he was not involved because he was not present for the vote that occurred on November 18, 2022.  Again, the court finds that there is an issue of fact as to whether a non-voting member can affect FRC decision-making.

For these reasons, the court will grant the motion for summary judgment as to Estes' First Amendment free exercise claims.  The motion will also be granted as to Estes' RLUIPA claims that are based on the denial of Etrog and Lulav.  The motion will be denied in all other respects.

## C.  Plaintiff's Claims Against White

The court ordered Estes to provide an address to accomplish service on White.  (Dkt. No. 32.)  The court warned that failure to comply would result in any claim against the defendant being dismissed without prejudice.  (*Id.*)  In his response, plaintiff indicates that White now lives in South Carolina, but Estes cannot find an exact address.  (Dkt. No. 34.)  Because this information is insufficient for the court to attempt service, White will be dismissed from this action without prejudice.

### III.  CONCLUSION

The court will issue an appropriate order granting in part and denying in part defendants' motion for summary judgment and dismissing the claims against Anthony White.

Entered:  September 26, 2025.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge

---

[3] Morris has been described as a religious advisor, but his affidavit states that he is a member of the FRC. (Morris Aff. ¶ 1.)

9